Case number 22-5209, Judicial Watch, Appellant v. United States Department of Justice. Mr. Peterson for the Appellant, Ms. Capaldon for the Appellant. Good morning. Please proceed. Good morning, Your Honors. James Peterson for Appellant, Judicial Watch, Inc. This case is about an extraordinary government intrusion into the private lives of Americans. Now, not surprisingly, the government is trying to hide its actions. Credible evidence indicates that early in its January 6th investigation, the FBI sought and received financial records of anyone who used a credit card or engaged in financial transactions in the D.C. area on January 5th, 2021. This case seeks records to determine if a wildly improper sweep of financial records of innocent Americans occurred. Instead of responding to the FOIA requests in this matter, the FBI is hiding behind the ever more frequently used and frequently asserted and abused blowmark doctrine. In fact, the FBI claims that affirming or denying the existence of records... I'm just curious, Counsel, what's the support for your claim that the FBI has been abusing? Well, you can see that over the years, the blowmark has been increasingly used by the agency. We see it in our practice. There are more court decisions every year. According to my records, I only looked back 10 years. I only see two cases where we vacated a blowmark response. Do you know of more? But there are more in the district court than there have ever been. They weren't reviewed by this court, right? In this court cases that make it to this court, so far, yes. But what were those cases? It was the ACLU versus CIA, and the government made it increasingly a preposterous claim. Well, and we reversed that. We denied that. But that's two in 10 years. I'm just curious about your claim that they're increasingly abusing it. I just wonder where that's from. Well, there are published studies that would be happy to supplement. No, that's okay. I'm just... You've said enough. Go ahead with your argument. Okay. But what the FBI is really doing is refusing to confirm or deny, by using the GLOMAR, that it conducted this improper phishing expedition into financial records. The GLOMAR claim in this case, however, is not consistent with the language or legislative purpose of FOIA or the GLOMAR doctrine. There is no law enforcement technique that will be revealed as using financial records, as the FBI admits, is a well-known investigatory technique to Americans. There is no danger that any secret or procedure or other information will be revealed. Excuse me, but there's an affidavit from the agency which says that... Which is directly contrary to what you just said. It said that there are, I think, over 300 cases still open. Uh, and if they admit or deny the existence of this, it could influence some or all of those cases. Well, I... I mean, you need to stick to the record here. You've got a declaration from the agency saying that, uh, that revealing this information could jeopardize up to 300 cases, current cases. We have a conclusory self-serving declaration. Wait, wait. Why is that conclusory and self-serving? That's stated under oath by the FBI, about 300 cases. Now, what is conclusory or... Do you mean self-serving that it's supportive of the FBI's case? Is that what self-serving means? In this case, yes. So any... Every piece of evidence is self-serving in any case. Well, in this case... A person wouldn't propose evidence to work when the help... And this court would have no role here if it was... If it was simply going to accept every... Every statement made by... So what's conclusory about it? By simply saying... By simply saying that, uh, it may... It... It will affect the... These open investigations. Well, doesn't that sound right? The... The standard is, has the FBI shown a logical connection, right? That's what they have to show. Because we don't know for sure. Doesn't it seem quite logical that if, uh, if potential defendants know about this process, that they could take action to... To cover their tracks? Well, more precisely... What's the matter with that logic? More precisely, Your Honor, excuse me, the, uh, the question is, is to a reasonable person... No, no, no. Please answer my question. The standard is... That logic is actually the word I think our court has used, right? It... It doesn't... Does it make sense? Is it logical that the FBI's, uh, that it could be that this could jeopardize ongoing law... Law enforcement activities? And... And... And I'm asking what's... What's illogical about that claim? What is illogical is the idea... What is illogical, Your Honor, is the idea that... That targets of the January 6th invest... Any... Any person that may have been any tangentially involved, or any American at all, is unaware that the FBI, uh, uses financial records... How about one of the 300 people who's under investigation? I'm sorry, Your Honor? I said, how about one of the 300 people who is still under investigation? How about one of them? But the... This... The... The question is, is to a reasonable person, is it logical or plausible that, uh, that, uh, the FBI would not be using... Might use financial records? The FBI admits that it's... That it's well known there's nothing secret about its use of financial records. It's obvious to any... Any person that's ever seen a private... But... But your... Your FOIA request is not about, like, whether you use financial records. And I grant you that, um, there's lots of information in the public domain from the criminal prosecutions that they have used from, uh, financial records. Get financial records by search warrant. They can get them by going through the trash. They can get them by subpoenaing the accountant, uh, by the wife, or someone else with possession, custody, or control turning them over, um, by a defendant voluntarily providing them. Um, there's lots of ways that they can get what you have asked for are records of their requests to financial institutions. And that's what's not in the public domain, right? Uh, I... I believe there is substantial evidence in the record... Point me to some. In the... In the examples that are... That are highlighted in our... Our brief, the, uh, the... The... The court documents filed by the FBI says they obtained, uh, quote, obtained records from financial institutions. There's... There... They didn't... They didn't do that by, uh, by waiting for somebody to drive by and... What do you... What do you think of the district court's explanation of that? That is that there were three or four different federal agencies involved in this, and we don't know which one might have... But... But... Are... That... That's... That is a distinction that makes no different... Difference, Your Honor. The question is... Wait, why is that? You... You've asked for... You've asked for, uh, documents from the FBI, right? Because the... Because the idea that... And... And the declaration says there are three or four other agencies also involved. So we... We don't know from... As the district court said, we don't... You... You... You can't tell from this whether it's the FBI or not. Because it's a distinction that doesn't matter. The... The point of, uh, the source of the information is... It is from the perspective of what you're... What you've been asking about is from the perspective of a target, of a potential target of an investigation. It doesn't matter where... The route that the records got to the FBI. The question is whether they would be aware to, uh, that the FBI might be accessing financial records. And the idea that... Frankly, the idea that the capital... That the FBI is outsourcing its, uh, uh, info... Its, uh, routes of information to the Capitol Police to obtain financial records, uh, is simply not plausible, which is the standard in this case. The, uh... The FBI routinely uses this information. It says in its documents that it obtained this information from financial institutions. There's more than enough basis that... That that's exactly what they did, is they communicated with financial institutions to obtain this. That's their function. For them to now say, oh, well, we might have gotten it in some other indirect way, you know, strange reality. So do you get any weight to the point made that there may be this general information, but the precise techniques, the precise methodology used... None of that has been shown to have been either previously acknowledged or disclosed? We... We do not, Your Honor, for the simple reason that this is not, uh, some, uh, secret, uh, uh, procedure of a... Of a listening device or an unknown technology. How do you know? Because... Because the FBI hasn't... Hasn't said that it is. I mean, uh... Well, so silence is an admission? Well, again, this is a standard. We're... We have a standard here of what's logical and plausible. I mean, if the... If this court wants to be a rubber stamp for an agency and accept everything they say and find any fine distinction, uh, to uphold it, that's... That's... That's your choice. But in reality, what it is, is it's a... It's a relatively simple investigations where they were trying to identify, they admit this, they've done it many times, that they were trying to identify the location of people and they used financial records. So the idea that they communicated while they're in the process of doing this is simply common sense with all respect, Your Honor. Well, counsel, let me ask you then, in other words, under FOIA, as you read it, it doesn't matter if there are techniques and methodologies. If it's logical to an average person that in the course of a criminal investigation, an agency working in connection with that financial records, and that covers the waterfront, and that's the end of any obligation and burden in your reading of FOIA. And I understand your arguments about, well, long ago came up with this Glomar approach. And so far that continues to be the law in this circuit. And you're stuck with that, aren't you? And where you're not challenging here, as I understand it, the expertise that could have been involved. And I really don't see any claim of bad faith, but simply your argument is that the courts have set these standards too high when everyone knows that agencies involved in criminal investigations are going to seek financial records. Well, you're correct, Your Honor, on two points. First, we agree that the Glomar doctrine as it's involved under the law, it sets far too high a burden on a FOIA requester. But in this case, we're not asking here for you to change the law on Glomar. We know this panel cannot. But we're asking in this case for an application to these facts of exactly what the standard is and not simply bless an implausible and illogical explanation from an agency that it did not do what it routinely does and says it does, which is to obtain financial records. We're simply asking for that level of review and not excessive deference under Glomar or FOIA to statements of an agency. So I guess I would come back and simply ask then, while you say you're not challenging Glomar itself, it seems to me that you are challenging some of our previous decisions as to how this under 7E. Well, we're certainly open to the idea that it's necessary to seek on a bank review or other to review the law. That is fine. But we don't believe it's necessary under these facts in this case to get there. Well, our case law says under Glomar you have to show that the information requested is as specific as the information previously released. So how do you meet that? Because what we have is information in the record that confirms they sought, obtained, and used financial records from financial institutions. That's what we're asking for. Are you talking about the online article? Is that the one? No, I'm talking about the court filings describing how they prosecuted January 6th defendants and used financial data. Specifically, you have one example. It's with page 11 of your brief from the USP Kevin Douglas Creek case where you quote from one of the statement of facts that financial records obtained from JPMorgan Chase Bank corroborate Creek used a credit card in his name to purchase gas. Yes. So that you say is as specific as the information that you are requesting. But the question, the question in the end is, can, is a court going to look for any possible distinction of the facts in order to uphold an agency's claim? Or is it going to apply logical plausible standard of a reasonable person which is what the law requires? In this case, a reasonable perpetrator is looking at this that they obtained records from the financial institution, or in the previous example on page 11, the bank provided records to the FBI. I mean, a reasonable person would interpret that as saying the FBI communicated with the institutions that obtained these records. That's not exact. That's not an implausible or for any way illogical conclusion. Well, they could have gotten them in other ways. I'm sorry. I said they could have gotten them in other ways. But as I mean, there's theoretically an unlimited number of ways. Right. They're not very likely. That's the whole point. But it isn't as quite the standard is not mathematical certitude. The standard is logical and plausible. And what's logical and plausible is the FBI, they ask these financial institutions to provide records. The FBI does this. The director of the FBI admitted this week and this before the Senate panel that it obtained user location identities of cell phone users by buying it from companies. Well, the FBI has a pattern of doing these things. Judge Rogers, do you have any further questions? No, thank you. Judge Tatel. All right. You've exceeded your time, but we'll give you some time on rebuttal. Let's hear from the government. Ms. Stapleton. Thank you, your honor. Good morning. Thank you, your honors. And may it please the court. Anna Stapleton on behalf of the government. Morning. This case is about whether the FBI must disclose whether it asked financial institutions for certain financial records as part of its investigation into the events of January 6th. And I'd like to begin this morning by focusing on three reasons why as a practical matter, it is important that the FBI be able to make its response in this case. Those three reasons in short are because of the specificity of the FOIA request at issue here, because of concerns about a mosaic effect, and because of the importance of consistently using a glomer response across similar requests. So to begin with my first point on specificity, the FOIA request at issue here is not just a request for information about the use of financial records, generally speaking. It's not even just a request about whether the FBI communicated with financial institutions about financial records generally. It's instead a very specific request that seeks records of communication between the FBI and any financial institution, including the specified ones, in which the FBI sought transaction data for those financial institutions' debit and credit account holders. That's one piece of specificity. Who made purchases in Washington, Maryland, and or Virginia. That's a geographic limitation. On January 5th, 2021 and or January 6th, 2021. So that's a temporal limitation. And of course that request was narrowed to request, excuse me, for records of such communications made in the course of the January 6th investigation. That means that when the FBI, if the FBI, had to give a yes or no answer to confirm or deny the existence of responsive records, it would be giving a very specific answer about the kinds of information it sought, as well as, to Judge Dayton's earlier point, as to how it sought that information. If I may offer one practical example, suppose that a person came to January 6th, or excuse me, came to D.C., participated in the events of January 6th, arrived on January 4th, used the debit card to withdraw 500 bucks in cash on the 4th, and then didn't use the card again on January 5th or 6th. That person would be very interested to know whether what the FBI sought was specifically records of transactions on January 5th and 6th, as opposed to on the 4th or on other dates. That leads me to my second point, which is about the potential mosaic effect. As the CIDEL declaration points out in a couple different places, one concern here is that FOIA requests don't exist in VEC. There could be multiple FOIA requests asking about different kinds of techniques. That would include, for example, a second FOIA request that might also ask, did the FBI seek information about financial transactions on January 4th? It could include information about, or excuse me, requests seeking information about the other kinds of techniques that the FBI used. Did they, you know, use video from security cameras in local businesses? Are they using facial recognition technology? By piecing together information from multiple different FOIA requests, it would be possible for both a January 6th participant and also someone who might be considering participating in a future event, similar kind of event in future, to piece together a comprehensive picture of how the FBI goes about investigating these kinds of investigations. As Judge Wilkins mentioned earlier, it involves hundreds of people. Many of those people remain, or excuse me, I think it was Judge Cidel who was asking this question earlier. Many of those people remain unidentified. Hundreds of people came from all over the country, were in D.C. or the area for a short period of time, and then left. And the question is, how does the FBI go about investigating, finding out who those people were and what they may or may not have done? So to allow through multiple FOIA requests where the FBI has to say yes or no, we use this technique or we use this specific technique in this particular way, would potentially give those folks a great deal of information about how to avoid getting caught. And then to the third point about the importance of using the GLOMAR response consistently, you know, GLOMAR of course means that the agency is neither conforming nor denying the existence of responsive records. Were the agency to only use a GLOMAR response, for example, when responsive records actually did exist, that would be a clear tip-off. So we have to, the agency has to use it both when records do exist and when they don't. Similarly, it's important that the agency use the GLOMAR response when there's been no official acknowledgement, potentially even if the public might suspect that they know what went on. As long as the public doesn't know, Judge Wilkins, you were asking about, I think, the more standard for official acknowledgement and the specificity of the information that's been previously disclosed. As long as the public doesn't actually know that specific information, it's important that the FBI continue to consistently use GLOMAR to protect it. What do you mean as long as the public doesn't know that specific information? So for example, in this case, your honor, and this was of course discussed with my friend, what the public knows because of the statements made in the criminal cases, and those are excerpted in our brief at page 28, and that of course also includes record citations. What the public knows is that the FBI at some point became aware of specific records for specific individuals. The public does not know, they may speculate, as happened in the news articles in the record, they may speculate about how the FBI came to obtain that information. But when the record says financial, when the statement says financial records obtained from what is the public or anyone to take from that as far as who they came from, says obtained from JPMorgan Chase Bank. So the key, your honor, is that it says they came from the bank, but it doesn't say to whom or how. So for example, as was mentioned earlier, if those records were given to another law enforcement agency and then passed on to the FBI, that scenario would not create responsive records in this case. Similarly, excuse me, similarly, if they were obtained pursuant to a subpoena, the FBI in analyzing this request determined that a subpoena would not constitute direct communications between the agency and the financial institution. There's one mention in the record of a subpoena. I would also note it doesn't say who sought the subpoena, right? So again, it could have been another law enforcement agency. Say that again, you're saying that the subpoena is not a direct communication between the FBI and the recipient of the subpoena? That's correct, your honor, because it would be intermediated by the court, potentially by a U.S. attorney's office. And again, I want to be clear, the other possibility is that a different government agency or a different law enforcement body sought the subpoena in the first place. And you're saying that the FOIA request was for communications, not a subpoena? Correct, your honor. So the request was for records of communication between the FBI and any financial institution. What about the more general point that, I mean, you don't have to be a rocket scientist to know that the FBI seen as financial records as part of their investigation? That's right, your honor, but we would say again, I would direct you to the specificity of the request. So this is, you know, did the FBI not just look for financial records generally, but did they look specifically for debit and credit card records from these two days in this geographic location, and did they do so as part of this investigation? So that's a lot of information. I gave the example earlier of someone who only used a debit card on January 4th. We might also consider a person who only used other kinds of financial transactions, made transactions through like electronic transfers, made a withdrawal of cash, but didn't use a credit card, right? All of those details are the kinds of information that would permit someone to potentially think, oh, I'm at risk. That person who believes that they're at risk may well go about trying to make prosecution of them more difficult, may consider destroying other evidence such as, you know, photos, take down social media posts, that kind of thing. It could also mean, as the court said in Mayer-Brown, you know, it matters if the agency would have to provide information that would inform someone they're not at risk of prosecution. And so if someone, for example, my hypothetical person who used the card on January 4th were to discover that their financial records were probably not obtained, they might be less likely to put themselves forward. And I'd like to emphasize, I see that my time has run, but finally that those same concerns are present for people who might participate in future events. Why wouldn't the FBI's concerns be dealt with just by applying the exemption under 7E instead of Lomar's and perhaps with them acknowledging, yeah, we have records, but for various reasons we intend to withhold various, you know, the records themselves and even only give some sort of very generic description of the records that we have so that it doesn't disclose what days, you know, we communicated precisely. So maybe that we have records from the 6th, but that doesn't mean that we don't have records from the 4th and the 8th. You know, so why can't this be taken care of under the exemption instead of under Lomar? So the problem, Your Honor, is again, because of the specificity of this request, simply answering yes or no, we do or do not have responsive records would give away all the details that are built into the request itself. So on the one hand, just saying yes or no on this request, if the agency were, for example, to say yes, it would mean that they did specifically ask banks for credit and debit records in that geographic area on those two days. Right, so that's one problem is you've already had to give away one very specific set of records. The second problem is, again, going back to the Mosaic issue, which is to say there could be other requests. And if the FBI had to say yes or no on this request, they would probably have to say yes or no about a request about did you ask? Why won't we just cross that bridge when we come to it? We say, okay, you can't do Glomar here. If there's another case and there's another request and it raises the Mosaic problem, then the official puts that in their affidavit at that time and the court considers that. So, Your Honor, I think, again, to be clear, this piece of information is valuable on its own because, again, you know, simply the yes or no answer here gives very particular information about exactly what the FBI sought. Whether the answer is yes, they did seek that, and so folks know that they might have been identified that way, or no, the FBI didn't seek this information, and so folks might know that they're in the clear. But the concern, I mean, the Mosaic concern is not one that this court has required to sort of wait and see in the past. So, it's discussed in Mayor Brown that, of course, when this court rules on a Glomar response, it's making a ruling of law that the agency has to consider in making its responses going forward. And this court said in Mayor Brown in 2009, one of the concerns was that in other analogous contexts, I'm quoting here, similar information could be sought. Everyone seeking in that situation to minimize tax liability, it was a case against the IRS, would love to have all the IRS guidelines for all the other schemes to learn when the agency is likely to seek enforcement versus when the agency views the specific context as too difficult to litigate. But this court said that that meant that the IRS could protect that information because it was both important on its own and because of the risk that folks could perform FOIA requests and seek other related information with the IRS. Judge Tatel, any questions? No. Judge Rogers, any questions? No. Thank you. All right. Thank you, counsel. Thank you, Your Honor. All right. Mr. Peterson, you were out of time, but we'll give you two minutes for rebuttal. Thank you, Your Honor. One point I would just like to briefly add is the point made by the FBI brief and by counsel here, that this FOIA request should fail because of the Glomar assertion, because there might be other cases, so there might be other FOIA requests coming up, you know, is an assertion that this court should look at very closely as representative of the for a limiting, for upholding a Glomar here because of what might be happening in the future. We ask this court for the kind of searching review that the law requires and not to give the excessive deference that the government is asking for in this case. Thank you. Thank you. We'll take the matter under advisement.
judges: Wilkins, Rogers, Tatel